1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 10cr1582-LAB and 13cv2458-LAB |
|---|---|
| Petitioner, | **ORDER DENYING AS MOOT MOTION TO PROCEED *IN FORMA PAUPERIS*; AND** |
| vs. | |
| MARTIN SANDOVAL, | **ORDER DENYING MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255** |
| Respondent. | |

11
12
13
14
15
16
17

18    Petitioner Martin Sandoval was tried and convicted by a jury of conspiracy to distribute
19  marijuana, and possession of marijuana with intent to distribute. He took an appeal, which
20  was unsuccessful. *See United States v. Sandoval*, 465 Fed. Appx. 653 (9th Cir. 2012). The
21  Ninth Circuit's mandate was effective January 30, 2012. In September of 2013, he submitted
22  a motion to vacate, pursuant to 28 U.S.C. § 2255, which was rejected for filing because it
23  appeared to be untimely and because his motion raised issues the Ninth Circuit had already
24  decided adversely to him.
25  / / /
26  / / /
27  / / /
28  / / /

1    Sandoval then submitted a new § 2255 motion,[1] pointing out that he filed a *certiorari*

2    petition, which was denied on October 1, 2012. He cites *Clay v. United States*, 537 U.S. 522,

3    532 n.4 (2003). The Court accepts that "if a prisoner petitions for certiorari, the contested

4    conviction becomes final when the Supreme Court either denies the writ or issues a decision

5    on the merits." *Id*. (quoting *United States v. Hicks*, 283 F.3d 380, 387 (D.C. Cir. 2002).

6    **IFP Motion**

7    Along with his § 2255 motion, Sandoval filed a motion to proceed *in forma pauperis*.

8    No filing fee is required for such a motion, however. *See United States v. Thomas*, 713 F.3d

9    165, 173 (3d Cir. 2013). The motion is **DENIED AS MOOT**.

10   **2255 Motion**

11   Sandoval raises fifteen principal issues: twelve in support of his argument that he

12   received ineffective assistance of trial counsel, one that his appellate counsel's failure to

13   raise a claim based on prosecutorial misconduct amounted to ineffective assistance, and one

14   that his appellate counsel's decision to petition for *certiorari* rather than file a request for

15   rehearing or rehearing *en banc* before the Ninth Circuit amounted to ineffective assistance

16   of counsel

17   Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Sandoval bears the

18   burden of showing that his counsel's performance was deficient and that the deficiency

19   prejudiced him.   His counsel's actions are entitled to a "strong presumption" of

20   reasonableness, and they are only considered deficient if they were objectively

21   unreasonable. *See United States v. Sanchez-Cervantes*, 282 F.3d 664, 671–72 (9th Cir.

22   2002).

23

24        [1] When the Court rejected the first motion for filing, it directed the Clerk's office to
     return the motion to Sandoval. The Court did not retain a copy of the returned document, and
25   the only portion in the record is the first page of the motion, which is attached to the
     discrepancy order (Docket no. 146.) While the motions, based on the first page, appear to
26   be similar, they are not identical. For example, the first motion was not signed. (*See* Docket
     no. 148 (letter stating Sandoval realized he forgot to sign the memorandum of points and
27   authorities, and that he had signed and back-dated it before submitting the second one).)
     The rejected motion is also stamped "REJECTED" and has a heading crossed out. (*See*
28   Docket no. 146 at 2.) The newly-filed motion does not bear the "REJECTED" stamp, and the
     heading is not crossed out. (Docket no. 149.) It is unclear how similar the two motions are.

1   After his own conviction, Sandoval was granted immunity and compelled to testify in

2   his codefendant's trial. But because the Court determined that he perjured himself during that

3   testimony, his sentence was higher than it would otherwise have been. The facts and

4   arguments are set forth in the Ninth Circuit's decision. *See Sandoval*, 465 Fed. Appx. 653.

5   None of Sandoval's claims has any merit, and in fact most of them are foreclosed by the

6   Ninth Circuit's decision.

7   **Ineffective Assistance of Trial Counsel**

8   Sandoval's thirteen arguments (Docket no. 149-1 at 11–13 (Sandoval's Mem. in Supp.

9   of Mot. to Vacate at pages 9–11)) fall into four general groups. Sandoval first argues he was

10  not properly advised about the consequences of a guilty plea, and was never told he might

11  be deported as a result. Second, he argues that his counsel made errors in connection with

12  an unrecorded interview during which he confessed. Third, he objects that he had a right not

13  to testify at his co-defendant's trial and his counsel failed to advise him of this. And fourth,

14  he objects that his counsel should have objected to or offered various other pieces of

15  evidence.

16  Sandoval's first group of arguments fails because he did not plead guilty; he went to

17  trial and was convicted. In addition, he declares under oath that he was warned both by his

18  counsel and in open court that he was deportable if convicted. (Docket no. 149 (Sandoval

19  Affidavit) at 16, §§ VI and VIII.)

20  His second group of arguments is essentially that there was something improper

21  about a DEA policy of not recording voluntary interviews, and that his confession during that

22  interview was involuntary. There is, however, insufficient evidence to support suppression.

23  The available evidence shows that Sandoval voluntarily came in for an interview (Trial Tr.,

24  152:21–159:7 (testimony regarding how interview was conducted)) and Sandoval points to

25  no evidence that anything improper was done there that would have rendered his confession

26  involuntary. Furthermore, the evidence he now wishes his attorney had introduced his was

27  his own testimony, which did not essentially contradict prosecution testimony. And of course,

28  putting him on the stand would have been risky.  He also claims his own confession was

1   hearsay, which is wrong; admissions of a party opponent are by definition not hearsay. Fed.

2   R. Evid. 801(d)(2).

3       It is also worth noting that Sandoval denied and continues to deny that he ever

4   confessed. (Mot. at 3–4.) Even accepting Sandoval's representation that he told his counsel

5   agents forced him to confess by threatening him and his family, pursuing this theory of

6   defense would have been a disaster. It was inconsistent with the theory that Sandoval never

7   confessed, and the only evidence to support it would have been Sandoval's only testimony.

8   Calling him to the stand to offer this new testimony would have been, at the least, very

9   questionable strategy. And, if Sandoval's current representations to the Court that he never

10   confessed are true, his testimony explaining that he did confess would have amounted to

11   perjury.

12       Sandoval faults his counsel for failing to request an adverse inference instruction

13   based on the fact that the interview was not recorded. But because government agents did

14   not destroy evidence, he was not entitled to one. *See United States v. Romo-Chavez*, 681

15   F.3d 955, 961 (9th Cir. 2012) (holding that an adverse inference instruction is available

16   against the government when a criminal defendant establishes that evidence was destroyed

17   in bad faith and he was prejudiced thereby). Although Sandoval argues that DEA agents

18   should record interviews, there is presently no requirement that they do so. *See, e.g., United*

19   *States v. Barajas*, 474 F.3d 1023, 1026 (8th Cir. 2007) (noting DEA's policy of not recording

20   interviews). Their failure to record his interview does not amount to spoliation of evidence.

21       Furthermore, the record shows that his counsel did capitalize on the unavailability of

22   a recording when questioning the interviewing agent, emphasizing that the agent had to rely

23   on notes taken in order to build a case (Tr., 177:16–181:18, 188:21–194:13), that the agent's

24   memory of events was not good enough to testify without notes (*id.*, 184:8–188:3), and that

25   recording the interview would have established that it really was accurately reported and the

26   confession was voluntary and truthful. (*Id.*, 203:24–206:15.)   An adverse inference

27   instruction, even if available, would have made little difference because Sandoval's counsel

28   made the same point in his questioning.

Sandoval's third set of arguments fails because, once immunized and ordered to testify, he had no right to refuse to testify at his co-defendant's trial, or to limit his testimony to particular topics. *See United States v. Doe*, 125 F.3d 1249, 1254 (9th Cir. 1997) ("When a witness is granted immunity and ordered to testify, refusal to testify may result in penalties for criminal contempt to punish the disobedient conduct of the witness.") His counsel did not err, much less perform ineffectively, by failing to attempt the limit the scope of questioning as Sandoval now argues. Furthermore, Sandoval is unable to identify any prejudice arising from the questioning. He posits that, had he not been asked the questions he was asked, he would not have been found to have lied. But the questioning did not require Sandoval to lie; that was his own choice. Had he truthfully responded to questions, he would not have suffered any injury. Although he now claims he didn't lie under oath, the Court found that he did. Sandoval presented essentially the same claim on appeal to the Ninth Circuit, which rejected it.

Sandoval claims his counsel should have made three particular objections: to admission of a "police report," supposedly to show Sandoval's character for truthfulness; to prosecutorial "vouching and bolstering of a government witness;" and to the admission of Sandoval's phone records. He also claims his counsel should have called his co-defendant to testify at his trial.

The report Sandoval calls a police report is apparently a police report Sandoval had filed, which was discussed during plea negotiations. (Mot. at 17.)[2] Alternatively, it could refer to the agent's report which was discussed in testimony, including extensive cross-examination by Sandoval's attorney.   But neither report was offered or admitted, so Sandoval's counsel had no occasion to object to its admission.

The alleged vouching and bolstering occurred during closing argument. (Mot. at 32.) In fact, the examples Sandoval cites were not improper vouching or bolstering at all. For

---

[2] Sandoval claims that DEA agents had threatened him in March, 2010 with prosecution over the police report, and that unless he confessed to crimes, he would be deported, but that if he confessed, he would not be deported and would be allowed to go free.

example, the prosecutor argued that the jury should believe the DEA agent who testified that Sandoval had confessed, because that agent was able to testify about specific details Sandoval had told him, and because the confession was corroborated. (Tr. at 332:5–333:4.)

Sandoval claims that his phone records were inadmissible because the eighteen calls he made to his co-defendant were never answered and therefore could not establish the existence of a conspiracy. But they were offered to corroborate Sandoval's confession, and to show an association between the two men. (Tr. at 333:5–334:15.) The cases Sandoval cites describe completely different situations, and Sandoval does not identify any reason why admission of his phone records was improper, or why his counsel should have objected.

Sandoval argues that his counsel should have obtained use immunity for his co-defendant and called him to testify at trial, without explaining what testimony his co-defendant would have offered. His co-defendant never took the stand in either trial, but was himself acquitted. Sandoval opines that "It would seem obvious that any compelled testimony given by him under grant of immunity would have been relevant, favorable to Sandoval, and directly contradict the government agent's testimony." (Mot. at 38.) He also believes that his co-defendant's acquittal make clear his co-defendant's testimony would have been helpful.

Sandoval's reasoning is incorrect. The fact that a non-testifying defendant was acquitted does not suggest that he could have offered helpful testimony in any other defendant's trial. In addition, without a showing sufficient to meet the standard discussed in *United States v. Straub*, 538 F.3d 1147 (9th Cir. 2008), the government would not have been required to grant immunity. And in any case, a *Strickland* claim requires a showing of prejudice, which in turn requires (among other things) evidence of what the witness would have said. *Alcala v. Woodford*, 334 F.3d 862, 872–73 (9th Cir. 2003). *See also Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (requiring, in general, that petitioner present affidavit from proposed witness).

/ / /

/ / /

/ / /

**Ineffective Assistance of Appellate Counsel**

Sandoval claims his appellate counsel was ineffective for failing to raise some of the issues above on appeal, including especially prosecutorial misconduct and the scope of questioning in his co-defendant's trial. He argues that, on appeal, the panel recognized the prosecutors had committed misconduct, but the panel could not rule on a misconduct-based claim because his counsel failed to raise it. In fact, the decision said nothing like that; rather, it noted that there was no allegation of prosecutorial misconduct or other abuse in the government's decision to ask the Court to compel him to testify. That is different from what he claims here, that he had a right not to testify and that the questions put to him were improper.

And even if this issue were meritorious, Sandoval's appellate counsel was not ineffective for choosing to abandon weaker claims and focus on a few stronger ones. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("Experienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.")

Sandoval also thinks his appellate counsel was ineffective for failing to file a petition for review en banc. He believes that because no such petition was filed, the Ninth Circuit was prevented from re-examining his claims. In fact, any judge in the circuit can sua sponte call for a rehearing en banc. *See generally* Fed. R. Civ. P. 35; *see also* Comm. Note to 1967 Adoption. The fact that Sandoval's counsel did not petition for rehearing did not, as he believes, prevent an eager Ninth Circuit from hearing his appeal en banc and granting him relief. Furthermore, Sandoval has not established that failing to file a petition for review amounted to unprofessional conduct, nor a reasonable likelihood that his counsel's seeking review would have made any difference. *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011); *Strickland*, 466 U.S. at 688–89.

**Other Issues**

The motion is peppered with various other arguments that might be considered claims, although it is not clear Sandoval intends them as such. Nor has he adequately developed

1    them.  In any event, the Court has reviewed the entire motion and finds its arguments,

2    including those not labeled as claims, lack merit.

3    **Conclusion and Order**

4         For these reasons, the motion, files, and records of the case conclusively show

5    Sandoval is entitled to no relief. *See* 28 U.S.C. § 2255(b). The petition is **DENIED** and a

6    certificate of appealability is also **DENIED**.

7

8         **IT IS SO ORDERED**.

9

10    DATED:  June 1, 2015

11

12    **HONORABLE LARRY ALAN BURNS**
      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28